UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JERMAINE M. LOCKETT, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:21-CV-268-JD-MGG |
| RON NEAL, et al., | |
| Defendants. | |

## OPINION AND ORDER

Jermaine M. Lockett, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Lockett claims Capt. M. Itodo authored an allegedly false incident report against him on February 15, 2021. Specifically, Capt. Itodo noted in the incident report:

> On 2-15-2021 at approx. 5:15 am, RN S. Webster called the shift supervisors office from MSU and spoke with me (Capt. M. Itodo) stating that Offender Lockett . . . walked over to MSU confused slurred speech, and appeared to be under the influence of an unknown substance from the PDR asking to speak with Capt Itodo at MSU, he was assessed by RN S. Webster and given 2 does of nasal Narcan. He was then placed in a hold

cell on observation. He will receive a conduct report for being under the influence.

ECF 1 at 2–3. However, according to Lockett, he was monitored at all times when pushing the food cart in the PDR unit as part of his job and, therefore, could not possibly have been under the influence of any substance. He claims on the day of the incident, he was being escorted back to his unit when an unnamed officer directed he be brought to medical instead. When he arrived, RN S. Webster (Nurse Webster) "tried to put something up [his] nose," but he resisted so—even though an unnamed officer held him down—Narcan "never reached [his] body." *Id*. at 3. As a result of the incident, he was fired from his job and was "moved to a drug unit." *Id*. However, he did not receive a conduct report or a hearing before the Disciplinary Hearing Board (DHB).

During the move to the drug unit, which occurred in March of 2021, Lockett was escorted with his personal property to a new cell. However, part of his property—including a bag of hygiene items, a hair trimmer, a battery charger, and a "bag of court document[s]" related to his criminal conviction—was left behind because it was too heavy to carry. Sgt. Weldon[1] informed him his property would be "safe," but it never arrived. *Id*. at 4. Later that week, a counselor advised Lockett that Sgt. Weldon had informed him she had given the items to Officer Saylor, who is not named as a defendant. However, Lockett believes the statement by Sgt. Weldon was false. Several

---

[1] Lockett refers to her as "Sargent Weldon" in the caption of his complaint and "Srgt. Weldon" and "Sgt. Weldon" interchangeably throughout the body of his complaint.

days later, Lockett claims a different officer saw some of his court documents in his old cell.

On April 7, 2021, an officer brought him two bags from the property room and told Lockett it contained his court documents. Lockett refused to take the bags because he "couldn't trust what was already lost plus things was (sic) miss[ing] and the fact my property was suppose[d] to be with me by my handle at a times." *Id*. at 5. Lockett has sued Warden Ron Neal, Capt. Itodo, and Sgt. Weldon for monetary damages.

The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. That said, "[t]he Constitution does not give prisoners any substantive entitlements to prison employment." *Soule v. Potts*, 676 Fed. Appx. 585, 586 (7th Cir. 2017) (citing *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (2020); *Wallace v. Robinson*, 940 F.2d 243, 247 (7th Cir. 1991) (en banc)). Moreover, because a prisoner does not have a liberty or property interest in a prison job, a deprivation of that job does not violate any procedural due process rights. *DeWalt*, 224 F.3d at 613. Due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The loss of a prison job does not meet that high standard. *See Hoskins v. Lenear*, 395 F.3d 372, 374–75 (7th Cir. 2005) (prisoner not entitled to process for discipline of two months in segregation, the loss of prison job, the loss of privileges, and a transfer). Therefore, to the extent Lockett claims his rights were violated when he lost

3

his job due to Capt. Itodo's allegedly false report and did not receive a disciplinary hearing in connection with it, he has not stated any claims.

A similar analysis applies to Lockett's claim regarding his transfer to the drug unit. The constitution does not require due process for all transfers within a correctional facility. *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005). An inmate is entitled to due process protections only when his detention is lengthened or when he is subjected to more restrictive conditions that pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Inmates have no liberty interest in avoiding short-term transfer to segregation, *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008), or in avoiding restrictions "that do not substantially worsen the conditions of confinement." *White v. Scott*, 849 F. App'x 606, 608 (7th Cir. 2021); *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments."); *Healy v. Wisconsin*, 65 Fed. Appx. 567, 568 (7th Cir. 2003) ("[I]nmates do not have a protected liberty interest in a particular security classification.") (citing *Sandin*, 515 U.S. at 486).

Here, Lockett does not allege he was placed in segregation as a result of the incident or provide any details to suggest his reclassification to the drug unit posed an atypical and significant hardship to the ordinary incidents of prison life. Of note, the reclassification allegedly occurred in March of 2021, and his complaint was filed the following month. Therefore, Lockett has not stated any claims on this ground either. *See Lekas v. Briley*, 405 F.3d 602, 610–14 (7th Cir. 2005) (even ninety-day placement in

4

disciplinary segregation where inmate was "prohibited from participating in general population activities," deprived of contact with other inmates, and barred from "educational and work programs" did not trigger due process concerns).

Lockett also alleges his property and legal materials were either misplaced or stolen, presumably by Sgt. Weldon. As noted above, the Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. However, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy."). Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq*.) and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). Therefore, Lockett's allegations with regard to the loss of his personal property do not state a claim against Sgt. Weldon or any other defendant.[2]

---

[2] Lockett states the bag of court documents pertain to a "case that I've been falsely convicted of." ECF 1 at 4. However, he does not provide any other details regarding that case or plausibly allege he has

5

Finally, inmates possess a Fourteenth Amendment due process liberty interest in "refusing forced medical treatment while incarcerated." *Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019). To establish such a claim, the prisoner must demonstrate that the defendant "acted with deliberate indifference to his right to refuse medical treatment." *Id*. "Neither negligence nor gross negligence is enough to support a substantive due process claim, which must be so egregious as to 'shock the conscience.'" *Id*. (citation omitted). Moreover, a prisoner's right to refuse medical treatment can be overridden by "a prison regulation that is reasonably related to legitimate penological interests." *Id*. at 343; *see also Russell v. Richards*, 384 F.3d 444, 447-50 (7th Cir. 2004) (concluding inmate's liberty interest in refusing unwanted medical treatment of delousing shampoo was overridden by jail policy designed to address legitimate interest in avoiding outbreaks of lice). "[I]f legitimate penological interests dictate that a particular treatment must be administered even if the prisoner would have refused it, then . . . there is no constitutional right to refuse treatment." *Knight*, 942 F.3d. at 343 (quoting *Pabon v. Wright*, 459 F.3d 241, 252 (2d Cir. 2006)).

Here, Lockett claims Nurse Webster tried to administer the Narcan, but he resisted so it never entered his system.[3] In other words, he was not forcibly medicated

---

been denied access to the courts. Instead, he alleges he was charged for every document and that his mother paid for all of them. As noted above, he has an adequate post-deprivation remedy for the pecuniary value of the documents. That said, he has provided additional information about the documents in a separate lawsuit, *see Lockett v. Warden Ron Neal*, cause no. 3:21-CV-319-JD-MGG (N.D. Ind. filed May 5, 2021), so any potential First Amendment access to the courts claims will be addressed there.

[3] Lockett has not sued Nurse Webster in this lawsuit. However, he has named her in a separate lawsuit, *see Lockett v. Warden Ron Neal*, cause no. 3:21-CV-319-JD-MGG (N.D. Ind. filed May 5, 2021), so the claims against her will be addressed there.

because the attempt to treat him was ultimately unsuccessful. Therefore, his Fourteenth Amendment rights were not violated. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) (plaintiff can plead himself out of court if he pleads facts that preclude relief); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) (same). Moreover, Lockett has not alleged any of the named defendants were personally involved in the Narcan incident. There is no indication Warden Neal or Sgt. Weldon had anything to do with it, so they cannot be held liable in their individual capacities. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009); *see also Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003) (A lawsuit pursuant to § 1983 against an individual requires "personal involvement in the alleged constitutional deprivation to support a viable claim.") (citations omitted). And, although Lockett claims Capt. Itodo authored the incident report after receiving a call from Nurse Webster about it, these allegations do not state a claim against him because Lockett has not alleged he was involved in the decision or attempt to administer it. Merely suspecting Lockett of being under the influence of drugs and writing up the incident report, even if wrong, does not violate the Constitution. Thus, the complaint fails to state any claims related to the attempted administration of Narcan.

In sum, this complaint does not state a claim for relief against any of the defendants. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile."

7

*Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). Such is the case here.

For these reasons, the court DISMISSES this case pursuant to 28 U.S.C. § 1915A for failure to state a claim.

SO ORDERED on April 6, 2022

/s/ JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT